# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MATT BREIDERT, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>              v.<br><br>ZILLOW GROUP, INC., JEREMY WACKSMAN, and JEREMY HOFMANN,<br><br>        Defendants, | **Case No:  2:26-cv-2016**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

PAGE 1

Plaintiff Matt Breidert ("Plaintiff") brings this action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, against Defendants the Zillow Group, Inc., (together "Zillow" or the "Company"), Jeremy Wacksman, and Jeremy Hofmann (collectively "Defendants"), individually and on behalf of all other similarly situated persons or entities who purchased or otherwise acquired Class A or Class C Zillow common stock between February 11, 2025 and May 7, 2026, inclusive (the "Class Period"), and were damaged thereby (collectively, the "Class").

Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, the review and analysis of: (i) transcripts, press releases, news articles, lawsuits, reports, and other public statements issued by or concerning Zillow; (ii) research reports issued by financial analysts concerning Zillow; (iii) reports and other documents filed publicly by Zillow with the SEC; and (iv) other available materials relating to Zillow. Plaintiff's investigation into the factual allegations contained in this Complaint is continuing, and many of the relevant facts are known only by Defendants or are exclusively within their custody or control. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth in this Complaint after a reasonable opportunity for further investigation and discovery. [1]

## **INTRODUCTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Zillow Class A or Class C common

---

[1] Unless otherwise noted, all emphasis is added and internal citation is omitted.

COMPLAINT

PAGE 2

stock (and collectively, "Common Stock") during the Class Period, seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Zillow and certain of its top officials.

2.      Zillow is a leading real estate and rental marketplace offering a platform for buying, selling, renting, and financing homes.

3.      Zillow, together with a former competitor, Redfin Corporation ("Redfin"), entered into an unlawful agreement (the "Redfin Agreement") in order to restrain competition.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Zillow's agreement with Redfin was not a "partnership," but rather an acquisition of Redfin's business; (2) as a result of the Redfin Agreement, Zillow faced a materially heightened  risk of regulatory scrutiny and liability under federal antitrust laws; (3) upon the filing of an antitrust lawsuit, Zillow continued to downplay its legal exposure; and (4) as a result, Defendants' statements about Zillow's business, operations, and prospects, were materially false and misleading and or lacked a reasonable basis at all relevant times.

5.      Contrary to Defendants' public statements during the Class Period, the Redfin Agreement was not a "partnership," but an anticompetitive acquisition that placed Zillow at materially heightened regulatory risk.

6.      The truth began to emerge on September 30, 2025, when the FTC filed a complaint against Zillow and Redfin alleging violations of federal antitrust laws, causing Zillow's Common Stock prices to decline.

COMPLAINT
PAGE 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**JURISDICTION AND VENUE**

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). A substantial portion of the acts in furtherance of the alleged fraud, including the preparation and dissemination of materially false and misleading information and the effects of the fraud, have occurred in this Judicial District. In addition, Zillow's headquarters are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11. Plaintiff purchased Zillow Class C common stock at artificially inflated prices during the Class Period, as set forth in the attached certification, and suffered damages as a result of the violations of the securities laws alleged in this Complaint.

12. Defendant Zillow Group, Inc. is a Washington company with its principal place of business at 1301 Second Avenue, Floor 36, Seattle, Washington 98101. Its Common Stock trades on The NASDAQ Global Select Market (the "NASDAQ"), under the ticker symbols "Z" (Class C) and "ZG" (Class A).

COMPLAINT
PAGE 4

13. Defendant Jeremy Wacksman ("Wacksman") served, at all relevant times, as the Company's chief executive officer ("CEO").

14. Defendant Jeremy Hofmann ("Hofmann") served, at all relevant times as the Company's chief financial officer ("CFO").

15. Defendants Wacksman and Hofmann are collectively referred to as the "Individual Defendants."

16. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

17. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

18. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under respondeat superior and agency principles.

COMPLAINT
PAGE 5

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

19. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Factual Background

20. Zillow is a leading real estate and rental marketplace offering a platform for buying, selling, renting, and financing homes. The Company's network operates under its own brand name and various other brands it has acquired.

21. As part of its growth strategy, Zillow sought to expand its control over rental listing distributions and increase the scale of its network by aggregating listings across competing platforms. To that end, on February 6, 2025, Zillow entered into the Redfin Agreement pursuant to which Zillow became the exclusive provider of multifamily rental listings on Redfin's platform and affiliated websites, including Rent.com.

22. Under the terms of the Redfin Agreement, Zillow paid Redfin $100 million to stop competing, facilitate the transition of its multifamily rental advertising business to Zillow, and shut down the remainder of its business. While Defendants characterized the Redfin Agreement as a "partnership" that would give Zillow exclusive access to Redfin's advertising platform, in truth, the agreement required Redfin to transfer its business to Zillow and exit the multifamily rental advertising market altogether. As a result, Defendants placed Zillow at a materially heightened risk of regulatory enforcement, without disclosing as much to investors.

23. In truth, the Redfin Agreement required Redfin to work to transfer all its own customers to Zillow. Moreover, Redfin was required to turn over "competitively sensitive" customer information to Zillow, regardless of whether those customers chose to do business with the Company. Through the Redfin Agreement, Zillow also acquired Redfin's employees and contractors,

COMPLAINT

PAGE 6

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

whom Redfin was required to fire and then help Zillow in turn hire. Further, as the FTC alleged, Redfin agreed that it would "not compete with Zillow for the provision of advertising of multi-family rental properties" – including, for instance, by selling leads to Zillow competitors – "for up to 9 years," ensuring that "after exiting the market, [Redfin] will stay out." For the foregoing reasons, the Redfin Agreement resulted in a materially heightened risk of regulatory enforcement.

24.     The Redfin Agreement was material to Zillow's rentals business. Zillow represented to investors that the Redfin Agreement expanded its distribution and increased listing inventory as a key part of Zillow's long-term strategy.

25.     The structure and effects of the Redfin Agreement created a materially heightened risk of antitrust scrutiny. That risk began to materialize in September 2025, when the Federal Trade Commission ("FTC") filed a complaint against Zillow and Redfin alleging violations of federal antitrust laws arising from the Agreement and its exclusionary effects.

**B. Defendants' Materially False and Misleading Statements Issued During the Class Period**

26.     On February 11, 2025, Zillow issued a press release entitled "Zillow and Redfin partner to make apartment hunting easier and give listings more exposure." (the "Announcement"). The Announcement stated that Zillow and Redfin announced "a ***partnership*** making Zillow the exclusive provider of multifamily rental listings [. . .] on Redfin and its sites[.]" In reality, rather than a partnership, Zillow had effectively acquired much of Redfin's operations in a manner which placed Zillow at materially heightened risk of antitrust enforcement.

27.     That same day, Zillow filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2024 (the "2024 Annual Report"). Attached to the 2024 Annual Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants Wacksman and Hofmann attesting to the accuracy of financial reporting, the disclosure of any

COMPLAINT

PAGE 7

material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

28. The 2024 Annual Report contained the following risk disclosure under the heading "[w]e are from time to time involved in, and have in the past or may in the future be subject to claims, suits, government investigations, and other proceedings that may result in adverse outcomes", stating in pertinent part:

> We are from time to time involved in, and have in the past or may in the future be subject to claims, suits, government investigations, enforcement actions and proceedings arising from our business, including actions with respect to intellectual property, privacy, consumer protection, information security, mortgage brokering, mortgage origination, real estate, real estate brokerage, environmental, data protection, *antitrust*, the Real Estate Settlement Procedures Act of 1974 (RESPA), fair housing or fair lending, compliance with securities laws, or law enforcement matters, tax matters, labor and employment, and commercial claims, as well as actions involving content generated by our customers, shareholder derivative actions, purported class action lawsuits, and other matters.
>
> \*      \*      \*
>
> Such claims, suits, government investigations, and proceedings are inherently uncertain, and their results cannot be predicted with certainty. Regardless of the outcome, any such legal proceedings can have an adverse impact on us because of legal costs, diversion of management and other personnel, and other factors. In addition, it is possible that a resolution of one or more such proceedings could result in reputational harm, liability, fines, penalties, or sanctions, as well as judgments, consent decrees, or orders preventing us from offering certain features, functionalities, products, or services, or requiring a change in our business practices, products or technologies, which could in the future materially and adversely affect our business, operating results and financial condition.

29. The statement in ¶ 28 was materially false and misleading at the time it was made because it omitted that Zillow's regulatory risk as it related to antitrust compliance had been materially raised as a result of the Redfin Agreement.

30. The 2024 Annual Report further stated the following:

> On February 6, 2025, we entered into a partnership ("rentals partnership") with Redfin Corporation ("Redfin"), making Zillow the exclusive provider of multifamily rental listings (properties with 25 or more units) on Redfin and its sites, including Rent.com and ApartmentGuide.com (together, "Redfin Rental Network"). Redfin will facilitate Zillow's

COMPLAINT

PAGE 8

entry into advertising agreements with property management companies that currently provide rental listings on Redfin. Pursuant to this rentals partnership, Zillow will make a $100 million upfront payment to Redfin and will pay Redfin for leads generated through the Redfin Rental Network for an initial period of five years with two optional two-year extensions, subject to the terms of the underlying agreements. We have not yet completed our evaluation of the impact this rentals partnership will have on our consolidated financial statements.

31.    The statement in ¶ 30 was materially false and misleading at the time it was made because it omitted that the "rentals partnership" was, in effect, an acquisition which Defendants knew or should have known would trigger a federal antitrust investigation and possible subsequent litigation, materially raising Zillow's regulatory risk.

32.    The statements identified in ¶¶ 26, 28, 30 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Zillow's agreement with Redfin was not a "partnership," but rather an acquisition of Redfin's business; (2) as a result of the Redfin Agreement, Zillow faced a materially heightened risk of regulatory scrutiny and liability under federal antitrust laws; (3) upon the filing of an antitrust lawsuit, Zillow continued to downplay its legal exposure; and (4) as a result, Defendants' statements about Zillow's business, operations, and prospects, were materially false and misleading and or lacked a reasonable basis at all relevant times.

## **THE TRUTH BEGINS TO EMERGE**

33.    On September 30, 2025, the FTC filed a complaint (the "FTC Complaint") against Zillow and Redfin alleging violations of federal antitrust laws arising from, among other things, the Redfin Agreement.

COMPLAINT

PAGE 9

34.     The FTC Complaint stated that "on February 6, 2025, Zillow and Redfin executed an unlawful agreement to remove competition from [the online rental marketplaces industry], starting with a $100 million payment to Redfin to exit the [Internet Listing Services] market."

35.     The FTC complaint stated that pursuant to the Redfin Agreement, "Redfin agreed to stop selling multifamily advertising, to terminate its existing multifamily advertising contracts, and to transition those customers to Zillow." Further, "[j]ust after the announcement of the plan, Redfin promptly terminated hundreds of employees who had supported this business and agreed to help Zillow hire them." In addition, "Redfin also turned over its most sensitive [information] to Zillow as it wound down its advertising sales business."

36.     The FTC Complaint stated that "Redfin's previously growing multifamily rentals business has ceased to operate, and, going forward, its websites will serve merely as one of several 'syndicators' hosting a copy of Zillow's listings."

37.     In sum, the FTC Complaint stated the following:

This agreement is nothing more than an end run around competition that insulates Zillow from head-to-head competition on the merits with Redfin for customers advertising multi-family buildings (that is, buildings with 25 or more units). Zillow and Redfin's unlawful agreement eliminates competition in violation of Section 1 of the Sherman Act. Considered as an acquisition, it is unlawful under Section 7 of the Clayton Act.

38.     During market hours on September 30, 2025, CNBC published an article entitled "FTC sues Zillow and Redfin, alleging antitrust violation in online rental listings." (the "CNBC Article"). The CNBC Article stated that Zillow shares had fallen "sharply" after the FTC's announcement.

39.     The CNBC Article quoted Daniel Guarnera, director of the FTC's bureau of competition, as stating that "[p]aying off a competitor to stop competing against you is a violation of

COMPLAINT

PAGE 10

federal antitrust laws[.] Zillow paid millions of dollars to eliminate Redfin as an independent competitor[.]"

40.    On this news, Zillow's Class C common stock fell $3.49 per share, or 4.33%, to close at $77.05 on September 30, 2025. The following day, it fell a further $3.57 per share, or 4.63%, to close at $73.48 on October 1, 2025.

41.    Further, on this news, Zillow's Class A common stock fell $3.51 per share, or 4.5%, to close at $74.44 per share on September 30, 2025. The following day, it fell a further $3.26 per share, or 4.37%, to close at $71.18.

42.    Nevertheless, after the FTC action was filed, Zillow continued to deny the allegations that it had violated federal antitrust laws, thus materially understating its regulatory risk. The CNBC Article quoted a Zillow spokesperson as stating the following:

> Our listing syndication with Redfin benefits both renters and property managers and has expanded renters' access to multifamily listings across multiple platforms[.] It is pro-competitive and pro-consumer by connecting property managers to more high-intent renters so they can fill their vacancies and more renters can get home. We remain confident in this partnership and the enhanced value it has delivered and will continue to deliver to consumers.

43.    By continuing to portray the Redfin Agreement as lawful, Defendants concealed the full extent of the legal risks facing the Company and the potential impact those risks would have on its business.

44.    Then, on February 10, 2026, after market hours the Company held its Q4 2025 earnings call (the "Q4 Call"). Defendant Hofmann disclosed the following on the Q4 Call:

> Last, we have ongoing elevated legal expenses. Of note, we estimate year-over-year increases in legal expenses will result in approximately 200 basis points headwind to EBITDA margins in Q1.

45.    Further, Defendant Hofmann disclosed on the Q4 Call that Q4 EBITDA "expenses of $505 million were slightly above our outlook due to higher-than-expected legal expenses."

COMPLAINT

PAGE 11

46.     On this news, Zillow Class C stock fell $9.32 per share, or 17.12%, to close at $45.10 on February 11, 2026. The next day, it fell a further $1.40 per share, or 3.1%, to close at $43.70 per share on February 12, 2026.

47.     Further, Zillow Class A stock fell $9.05 per share, or 16.5%, to close at $45.66 on February 11, 2026. The following day, it fell a further $1.84, or 4.02%, to close at $43.82 on February 12, 2026.

48.     Then, during market hours on May 7, 2026, Reuters published an article entitled "Zillow, Redfin fail to end FTC lawsuit claiming they suppressed rental competition." The article stated that a "federal judge rejected [Zillow and Redfin's] request to end a [FTC] lawsuit accusing them of illegally agreeing to suppress competition for online apartment rental listings."

49.     On this news, Zillow's Class C common stock fell $0.85 per share, or 1.9%, to close at $43.68 on May 7, 2026. The following day, Zillow's Class C common stock fell a further $2.25 per share, or 5.15%, to close at $41.43 on May 8, 2026.

50.     Further, on this news, Zillow's Class A stock fell $0.79 per share, or 1.76%, to close at $44.04 on May 7, 2026. The following day, it fell a further $2.10 per share, or 4.76%, to close at $41.94 on May 8, 2026. The following trading day, May 11, 2026, Zillow Class A common stock fell a further $1.29, or 3.07%, to close at $40.65 per share.

51.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Zillow's Common Stock, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS:**

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise

COMPLAINT
PAGE 12

acquired the publicly traded Common Stock of the Company during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's Common Stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

COMPLAINT
PAGE 13

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of the Company's Common Stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

58. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

COMPLAINT
PAGE 14

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- the Company's Common Stock is traded in efficient markets;

- the Company's Common Stock was liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's Common Stock; and

- Plaintiff and members of the Class purchased and/or sold the Company's Common Stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

59.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**
**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

61.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

COMPLAINT
PAGE 15

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

62.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained mis-representations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

64.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's Common Stock during the Class Period.

65.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or dis-seminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the secu-rities laws. These defendants by virtue of their receipt of information reflecting the true facts of

COMPLAINT

PAGE 16

the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

66. During the Class Period, Defendants acted with scienter in that they knew or otherwise were deliberately reckless in not knowing that the public statements disseminated on behalf of Zillow were materially false and misleading at the time they were made, as a result of the fact that Zillow had engaged in anti-competitive conduct with regards to the Redfin Agreement, which they knew or should have known would attract attention from the FTC, thus materially raising Zillow's regulatory risk. Specifically, Defendants knew that shortly after the announcement of the Redfin Agreement, Redfin terminated hundreds of employees who worked in the multifamily advertising unit, thus enabling Zillow to hire those same employees. Redfin also turned over sensitive information to Zillow that would, if discovered by the FTC, help support a case that Zillow broke the relevant anti-trust laws. To date, Zillow has not provided a compelling competing inference to the allegation that it misled the investing market about anti-trust compliance, considering that its efforts to have the FTC's Complaint dismissed failed.

67. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

COMPLAINT

PAGE 17

68.     As a result of the foregoing, the market price of the Company's Common Stock was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's Common Stock during the Class Period in purchasing the Company's Common Stock at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

69.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's Common Stock had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's Common Stock at the artificially inflated prices that they did, or at all.

70.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

71.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's Common Stock during the Class Period.

**Count II**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

72.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

COMPLAINT
PAGE 18

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

73. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

74. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

75. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's Common Stock.

76. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

COMPLAINT
PAGE 19

77. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 9, 2026                    Respectfully submitted,

                                        **CORR CRONIN LLP**


                                        *s/ Colin M. George*
                                        Colin M. George, WSBA No. 45131
                                        1015 Second Avenue, Floor 10
                                        Seattle, WA 98104
                                        Telephone: (206) 501-3544
                                        cgeorge@corrcronin.com

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim (*pro hac vice* forthcoming)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Zillow Group, Inc..
The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis not to exceed one-third of the recovery and will advance all costs and expenses. All payments of fees and expenses shall be made only after Court review and approval. The Zillow Group, Inc. Retention Agreement provided to the Plaintiff is incorporated by reference herein and is effective, upon execution and delivery by The Rosen Law Firm P.A.

**First Name:**        Matt
**Middle Initial:**
**Last Name:**        Breidert
**Mailing Address:**
**City:**                     Redacted.
**State:**
**Zip Code:**
**Country:**
**Phone:**
**Email Address:**

**Plaintiff certifies that:**

1. Plaintiff has reviewed a complaint and authorized its filing or the filing of an amended complaint.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

**Purchases:**     See attached Schedule A.

**Sales:**

**I have not sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years, except if set forth below.**

| | |
|---|---|
| I declare and certify under penalty of perjury, under the laws of the United States of America, that the foregoing information is true and correct. | **YES** |
| By Signing below and submitting this certification form electronically, I intend to sign and execute this certification pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act and retain the | **YES** |

Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis.

2 / 2

Date of signing: 05/19/2026 18:55:11 at Eastern Standard Time, USA



## SCHEDULE A

## MATT BREIDERT TRANSACTIONS

### PURCHASES (Ticker Symbol: Z Class C)

| Date | Shares | Price |
|------|--------|-------|
| 7/8/2025 | 150 | ($72.45) |
| 7/8/2025 | 500 | ($71.15) |
| 7/8/2025 | 1,000 | ($72.13) |
| 10/6/2025 | 700 | ($73.48) |
| 10/6/2025 | 350 | ($76.25) |
| 10/6/2025 | 150 | ($74.98) |
| 10/6/2025 | 150 | ($74.65) |
| 2/9/2026 | 1,000 | ($54.84) |
| 2/9/2026 | 1,000 | ($54.57) |
| 2/11/2026 | 1500 | ($45.40) |
| 2/11/2026 | 250 | ($44.92) |
| 2/11/2026 | 250 | ($45.03) |
| 2/13/2026 | 1,000 | ($43.43) |
| 2/13/2026 | 1,000 | ($43.29) |

### SALES (Ticker Symbol: Z Class C)

| Date | Shares | Price |
|------|--------|-------|
| 3/26/2026 | 650 | $43.54 |
| 3/26/2026 | 1,000 | $44.10 |